**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————

**UNITED STATES OF AMERICA**                              **22-cr-120 (JGK)**

                   **- against -**                              **MEMORANDUM OPINION**
                                                         **AND ORDER**
**EDWARD D. MULLINS,**

                              **Defendant.**
———————————————————————

**JOHN G. KOELTL, District Judge:**

        The defendant in this case, Edward Mullins, pleaded guilty
to a charge of wire fraud in connection with a fraudulent scheme
to obtain false and inflated reimbursements for personal expenses
from the Sergeants Benevolent Association ("SBA"), the union that
represents all current and former sergeants of the New York City
Police Department. ECF Nos. 2, 35. On February 7, 2023, The New
York Times Company ("The Times") filed a request with the Court
for an order "unsealing materials related to searches conducted
in [this] case," in particular any "copies of the search warrants,
search warrant applications, supporting affidavits, court orders,
and returns on executed warrants related to searches of the
property of Edward Mullins, Vincent Vallelong, Theresa Ashton,
Dennis Ostermann, Paul Capotosto, and the [SBA]" (together, the
"Sealed Materials"). The Times Ltr., ECF No. 41, at 2. The Times
argues that such unsealing is required "pursuant to the public's

right of access to judicial records, grounded in both the
federal common law and the First Amendment." Id.[1]

The Court directed both the defendant and the Government to
respond. Through counsel, the defendant advised that he has "no
opposition" to the request. ECF No. 44. The Government consented
to the unsealing of "the search warrants and returns on executed
warrants for the October 2021 searches of the SBA headquarters,
Mullins's home, and Mullins's cellphones because . . . Mullins
has [already] pled guilty in this case." Gov't Ltr., ECF No. 45,
at 1. However, the Government opposed the unsealing of the
remaining Sealed Materials, including the supporting affidavits
for the searches of Mullins's property and SBA headquarters, on
the grounds that "countervailing . . . interests in protecting
sensitive law enforcement techniques and the privacy of third
parties" justify continued sealing of these materials. Id.

The Government submitted the requested Sealed Materials to
the Court ex parte, along with an ex parte submission providing
additional sensitive details relevant to its opposition to the
unsealing request. The Court has engaged in an ex parte exchange
with the Government, and has also undertaken its own careful and
independent review of the requested materials, in order to ensure

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits
all internal alterations, citations, footnotes, and quotation
marks in quoted text.

that all materials relevant to The Times's request are produced and that any redactions applied to those materials are narrowly tailored to protect compelling countervailing interests.

For the reasons set forth below and in a corresponding <u>ex parte</u> Memorandum Opinion and Order ("<u>Ex Parte</u> Opinion"), which has been filed under seal to protect sensitive information, the unsealing request is **granted in part** and **denied in part**.

I.

The public enjoys a qualified right of access to judicial documents and proceedings, pursuant to both the common law and the First Amendment. <u>See</u> <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S. 1, 10 (1986); <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597-98 (1978); <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119-20 (2d Cir. 2006). To determine whether the common-law right of access requires disclosure of certain material, a court must conduct a three-part inquiry: first, the court must assess whether the material in question is a "judicial document," such that a presumption of access attaches; second, if the material is indeed a "judicial document," the court must determine the weight to be accorded the presumption of access; and third, the court must balance any countervailing considerations against the presumption. <u>See</u> <u>United States v. Amodeo</u>, 71 F.3d 1044, 1050-51 (2d Cir. 1995) ("<u>Amodeo II</u>"); <u>United States v. Sattar</u>, 471 F. Supp. 2d 380, 384 (S.D.N.Y. 2006).

3

Courts determine whether a First Amendment right of access attaches to certain materials using the "experience and logic" test, which requires consideration of (1) "whether the documents have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." Lugosch, 435 F.3d at 120. If this test is satisfied, the materials are subject to a presumption of public access, which can be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enterprise, 478 U.S. at 9.

## II.

The Government does not dispute that the sort of search warrant materials at issue here are judicial documents to which a qualified common-law right of access attaches. See Gov't Ltr. at 1; see also United States v. Cohen, 366 F. Supp. 3d 612, 620-21 (S.D.N.Y. 2019) (explaining that search warrants and warrant application materials are "judicial documents" because they are central to the "performance of [a] judicial function"); see also In re Search Warrant Dated Nov. 5, 2021, No. 21-mc-813, 2021 WL 5830728, at *2 (S.D.N.Y. Dec. 7, 2021) (collecting cases holding that a presumption of access applies to warrants, search warrant applications, supporting affidavits, and returns). Moreover, this presumption of access to warrant-related materials is entitled to

4

"great weight," because "a court's determination that a person's property may be seized involves the adjudication of the person's substantive rights" -- "conduct at the heart of Article III." United States v. All Funds on Deposit at Wells Fargo Bank, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009); see Cohen, 366 F. Supp. 3d at 621 (describing this presumption as "strong" and collecting cases). However, even where "the presumption of access is of the highest weight," sufficiently compelling "countervailing factors" can override that presumption and justify continued closure of the materials. Wells Fargo Bank, 643 F. Supp. 2d at 584-85; see also Lugosch, 435 F.3d at 124 ("Notwithstanding the presumption of access under [] the common law . . . , the documents may be kept under seal if countervailing factors . . . so demand.").

In this case, the Government argues that the Sealed Materials, with the exception of the search warrants and returns related to SBA headquarters and Mullins's property, must remain under seal in order to "preserve the integrity of sensitive law enforcement techniques" and "protect the privacy interests of third parties who were not charged in this case." Gov't Ltr. at 2. The Court of Appeals for the Second Circuit has recognized both of these interests as "countervailing factors" that must be carefully balanced against any presumption of public access. See Lugosch, 435 F.3d at 120; Amodeo II, 71 F.3d at 1050-51. With respect to the first countervailing factor, it is well settled

5

that the "law enforcement privilege" is "an interest worthy of protection," and that this privilege is "designed to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, [and] to safeguard the privacy of individuals involved in an investigation." United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) ("Amodeo I"). Often, these law enforcement interests are sufficiently compelling to override the strong presumption of access to warrant materials. See, e.g., Cohen, 366 F. Supp. 3d at 622-23 (redacting warrant materials in light of the "risk of impairing law enforcement investigations and the interests in preventing disclosure of law enforcement techniques" (citing Amodeo I, 44 F.3d at 147)).

The Court of Appeals has also made plain that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." In re Application of Newsday, Inc., 895 F.2d 74, 79-80 (2d Cir. 1990); Amodeo II, 71 F.3d at 1050-51 (describing "[s]uch [privacy] interests" as "a venerable common law exception to the presumption of access"). In determining the "weight to be accorded an assertion of a right of privacy," courts must consider "the degree to which the subject matter is traditionally considered private rather than public," "[t]he nature and degree of injury," "the sensitivity of the information and the subject," and "how the person seeking

6

access intends to use the information." Amodeo II, 71 F.3d at

1051. A court may also consider whether "there is [or has been]

a fair opportunity for the subject to respond to any accusations

contained" in the materials sought. Id. Courts have repeatedly

determined that these third-party privacy interests outweighed

the strong presumption of access applicable to warrant-related

materials and justified some measure of continued sealing. See,

e.g., In re Search Warrant Dated Nov. 5, 2021, 2021 WL 5830728,

at *6 (collecting cases and noting that "[t]here is a recognized

interest in protecting third parties from the unfairness of being

stigmatized from sensationalized and potentially out-of-context

insinuations of wrongdoing, combined with the inability of these

third parties to clear their names at trial"); see also Cohen, 366

F. Supp. 3d at 625 (authorizing certain redactions of warrant-

related materials to protect similar privacy interests); In re

Search Warrant, No. 16-mc-464, 2016 WL 7339113, at *4 (S.D.N.Y.

Dec. 19, 2016) ("Ordinarily, a person whose conduct is the

subject of a criminal investigation but is not charged with a

crime should not have his or her reputation sullied by the mere

circumstance of an investigation.").

Although the Government's publicly filed letter asserts

these two interests in general terms, its ex parte submission

articulates the basis for its position in detail. Upon careful

consideration of that thorough submission, and also upon a close

independent review of the requested Sealed Materials, it is clear that the countervailing factors described above are sufficiently compelling to outweigh the strong presumption of public access to certain portions of the documents at issue. To protect both highly sensitive law enforcement practices and the privacy of third parties, some degree of continued sealing is necessary.[2]

That said, the Government's position that most of the Sealed Materials should be shielded from disclosure entirely is not persuasive. "To the extent that compelling reasons exist to deny public access to [warrant-related materials], the limitation should not be broader than necessary." Wells Fargo Bank, 643 F. Supp. 2d at 585; see also In re Application of Newsday, Inc., 895 F.2d at 80 (cautioning that "drastic restrictions on the common law right of access are not always appropriate" and approving a district court's limited redactions of warrant materials). Put differently, "[t]he Court is required to order disclosure absent compelling reasons to deny access and even then must employ the least restrictive possible means of doing so." Wells Fargo Bank, 643 F. Supp. 2d at 585. In this case, disclosure of the Sealed Materials with appropriately tailored redactions strikes the proper balance between the strong presumption of public access

---

[2] In order to avoid jeopardizing these very interests, the specific grounds for this conclusion are set forth in greater detail in the Court's corresponding Ex Parte Opinion.

to search warrant materials and the compelling countervailing
interests discussed above. This Court has ensured, through both
its ex parte exchange with the Government and its independent
review of the documents, that the requested Sealed Materials will
be disclosed with redactions sufficient but no more restrictive
than necessary to safeguard sensitive law enforcement techniques
and the privacy of third parties.[3] The Court has supplied all of
its approved redactions to the Government, along with its Ex

---

[3] The Court notes that, while the Government has consented to the
complete unsealing of the search warrants executed in connection
with the October 2021 searches of SBA headquarters, Mullins's
home, and Mullins's cell phone, the Government appears to have
overlooked portions of text that implicate the compelling
countervailing interests asserted in the Government's papers.
Because those interests outweigh the strong presumption of
public access to those portions of text, the Court has applied
limited redactions to those portions as well. See In re N.Y.
Times Co., 828 F.2d 110, 116 (2d Cir. 1987) ("The job of
protecting such [countervailing privacy] interests rests heavily
upon the shoulders of the trial judge . . . ."); Cohen, 366 F.
Supp. 3d at 624 (determining the appropriate scope of redactions
by "independently assess[ing] [relevant] privacy interests based
on a review of the [warrant] [m]aterials"). The Court has also
applied narrowly tailored redactions to certain Sealed Materials
that are designed to protect the sufficiently compelling
interest in preserving the privacy of the defendant's home
address and other personal identifying information. See, e.g.,
United States v. Akhavan, 532 F. Supp. 3d 181, 188 (S.D.N.Y.
2021) (unsealing criminal trial exhibits with narrowly tailored
redactions for "sensitive personally identifying information,"
because "the interest . . . in preventing public access to []
sensitive personally identifying information . . . outweighed
the especially strong common law presumption of access"); United
States v. Vinas, No. 08-cr-823, 2017 WL 1969665, at *2 (E.D.N.Y.
May 11, 2017) (unsealing the defendant's military records with
limited redactions "necessary to protect [the] [d]efendant's
privacy interests" in his "family life" and his "personal
identifying information").

Parte Opinion, so that the Government can disclose the redacted Sealed Materials to The Times.

With respect to the First Amendment, the Second Circuit Court of Appeals has not addressed whether a constitutional right of access attaches to search warrant materials, and the weight of authority in this Circuit has concluded that the First Amendment does not give rise to such a right. See Cohen, 366 F. Supp. 3d at 628 ("Although the Second Circuit has not yet spoken, this Court holds that neither experience nor logic support a First Amendment right of access to search warrant materials."); see also United States v. Pirk, 282 F. Supp. 3d 585, 598 (W.D.N.Y. 2017) (collecting cases in which "[d]istrict courts in this circuit . . . rejected the notion that a First Amendment right attaches to provide access to search warrant applications"). However, it is unnecessary to decide whether a First Amendment right of access applies to the Sealed Materials because, even assuming such a right does attach, the countervailing factors discussed above are sufficiently compelling to overcome that right with respect to the portions of the Sealed Materials that will remain under seal. See, e.g., Sattar, 471 F. Supp. 2d at 389 (explaining that it was not necessary to determine whether a First Amendment right of access applied to a report because "the interest in personal privacy for the matters redacted from the report provide[d] a sufficiently compelling interest to overcome

that right"). Moreover, the disclosure of the Sealed Materials
with the Court's approved redactions is in full compliance with
any First Amendment right of access, because the redactions are
narrowly tailored to protect only those portions of the Sealed
Materials that implicate the compelling interests in preserving
sensitive law enforcement practices and protecting third-party
privacy interests. See, e.g., id. (noting that "the Court has
complied with" any First Amendment right of access "by redacting
the documents and disclosing those portions for which there is
not a sufficiently compelling interest"); Wells Fargo Bank, 643
F. Supp. 2d at 585 n.8 ("The law enforcement and investigative
concerns on which the Court has made its common law balancing
determinations are also higher values for purposes of [a] First
Amendment access analysis. Here, as is appropriate in a First
Amendment analysis, the Court has also narrowly tailored its
decision to narrowly preserve these compelling countervailing
interests, or higher values."); In re S.F. Chron., No. 07-mc-256,
2007 WL 2782753, at *3 (E.D.N.Y. Sept. 24, 2007) ("Even if this
Court were to determine that a qualified First Amendment right
to search warrant materials exists, the redactions at issue here
are narrowly tailored to further the higher value of maintaining
[third-party] privacy interests . . . .").

## CONCLUSION

The Court has considered all of the arguments of both the parties and The Times. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, The Times's unsealing request is **granted in part** and **denied in part.** The Court is providing to the Government all the Sealed Materials bearing the Court's approved redactions, together with the filed Ex Parte Opinion. After review, the Government should provide the redacted materials to The Times. This Order directing disclosure of the redacted Sealed Materials is **stayed** for **10 days** to allow the Government to review the final redactions and lodge any objections with the Court.

**SO ORDERED.**

**Dated:     New York, New York**
**           April 26, 2023**

_____

John G. Koeltl
United States District Judge